We have three cases this morning. Susan, can we turn that down just a tad? And because Judge Smith has an important engagement around noontime, contrary to what I normally do, which is to ignore the red light, I'm going to be semi-mindful of it today. So the first case we have is number 14-3485 McDaniels v. Warden Cambridge Springs SCI. Mr. Coffman and Mr. Adama. Is the volume still high? I think it's still a little high. One, two, three. We don't want to scare you guys. Testing, testing. May it please the Court, Max Coffman for the Commonwealth. Do you wish to reserve time for me? Yes, I would like to reserve five minutes for Rebama, Your Honor. That's fine. From the District Attorney's Office, Max Coffman. Is the Commonwealth's position that the District Court erred in granting habeas relief based on McDaniels' double jeopardy claim? Let me ask you this right out of the box, if I may, Mr. Coffman. Is there any dispute or disagreement among the parties that what occurred here at the verdict stage of this trial at common pleas was in fact a determination by those 12 jurors of not guilty on the charge of third degree murder, as a matter of fact? We do not dispute that it meets the very broad and easily met definition of acquittal. Our position is that the trial court lacked jurisdiction. I deliberately chose not to use the word acquittal. I deliberately chose to use the term not guilty. Is there any dispute that 12 jurors found this woman not guilty of the charge of third degree murder during their deliberations? That's the backdrop against which I look at this case. Well, we don't even get to the merits, Your Honor, because the claim is clearly defaulted. I'm asking you about the procedural history of this case. We haven't even reached in terms of... Let me finish my question, sir. I haven't even gotten to the question of exhaustion. What we have here factually, what this court is inquiring into, is a determination by a jury of 12 people, apparently erroneously recorded by the trial judge, of not guilty on the serious charge of third degree murder. Isn't that what we have agreed? Can we agree factually that that's what... There was no erroneous recording of the verdict. The jury foreperson announced that the jury was hung on the count of third degree murder, at which point the trial judge declared a hung jury. You believe there was an erroneous recordation of a not guilty verdict?  Well, apparently on the board in the back room there was an informal tally taken, but we have no transcript of what occurred. But we do have at the hearing on your motion a determination by Judge Poserena that he saw that board and that 12 people said not guilty. We do have a transcript that says that, don't we? And it really should constitute a finding of fact by Judge Poserena post-trial. Well, we have him stating for the record what he claims occurred, but we have no transcript. I'm an old common police court judge. I have a hard time figuring out how that's not a finding of fact. But even if it was an acquittal, Your Honor, it was still invalid because the court lacked jurisdiction. How did the court lack jurisdiction? The court had jurisdiction in your post-trial motion, right? Under PA rule, criminal procedure 608. Well, simply because the Pennsylvania court never lost jurisdiction in this case, did it? Jurisdiction. Well, simply because the court may have had jurisdiction to rule on certain matters doesn't mean the court had jurisdiction to rule on the guilt or innocence. Is that a question of jurisdiction or is that a procedural error? Well, the U.S. Supreme Court tells us in surface in Sanford that it is a question of jurisdiction. Well, let's go to the Fong-Fu case. You've got a case where a judge is upset with the government, and he's upset with the government's witnesses. And in the middle of the government's presentation, he just stops the trial and declares a verdict of acquittal. And it goes to the First Circuit, and the First Circuit said, this is just egregiously wrong. You can't do that. And it goes to the Supreme Court, and they said, First Circuit, not without reason, said this was egregiously wrong in doing what the trial judge did. But the double jeopardy is so important, such a bedrock of the amendments to our Constitution, that we're just going to abide it. Because what could happen here, even though the argument was the court did not have jurisdiction, you had Federal Rule of Civil Procedure 29 that allows post-trial somebody to come in and make an argument that you can ask for an acquittal after a conviction. Right? Not in a state trial, Your Honor. Federal Rule of Civil Procedure. This is 608 here. Our case is 608. Our case is 608. 608, but the point is that the court still had some jurisdiction over the case. That's not true, Your Honor. 606, the court could have entertained a motion for acquittal, right? Could have, could have, could have. No. 606 would have allowed Judge Poserena to entertain, post-verdict, a motion for judgment of acquittal, an oral motion, wouldn't it? Are you referring to 608? I was referring to 606. I thought it was 608. But anyway, bottom line, what are the sixes? 608, the court only has authority to grant judgment of acquittal if, A, the defendant makes a motion. Was 608, what was in effect at the time of the trial? Was 606 the same thing as 608? 607 is a claim under the weight of the evidence, but that just gets you a new trial. Right. It doesn't get you an acquittal. 608 only kicks in if the defendant makes a motion and the evidence is insufficient. At the time the jury is discharged is 608, right? Right. Neither of those things happened here, Your Honor. The court was without authority. In Fong-Fu, to refer back to Judge Eber's question, the court had the authority to direct the jury to acquit there. That authority was lacking here in the same way that it was lacking in Surface and Sanford, even though the district courts did not, were not available. Did the court in Fong-Fu have the authority? Absolutely. Under Rule 29? It wasn't Rule 29. It was back in the early 60s. I may have been confusing with Martin Lennon. I'm sorry, Your Honor? I said I may have been confusing Rule 29 from Martin Lennon. But I must emphasize, Your Honors, we never get to the merits here. This claim is defaulted. McDaniels never fairly presented this claim to the state courts. Now, what that calls for is you need a full round of presentation to the trial court and to the appellate court. Trial court, the judge on A436 specifically said that this is double jeopardy. Trial court said that. But that was a different double jeopardy claim. The trial court was under the impression that the informal vote in the deliberation room prior to reassembling the jury But the point is he understood the concept. But mere similarity of claims is not sufficient to exhaust, Your Honor. And so you have the trial court deciding a different double jeopardy claim and the Superior Court not addressing the double jeopardy claim whatsoever because it was not raised to that. But the Superior Court said, quote, at first glance, it appears that the Commonwealth is appealing a verdict of acquittal, which is clearly impermissible. What could that possibly mean? Other than I understand what's going on here, that normally you can't appeal this. And then the court went on and said, but in this case, having discharged the jury, you can't reassemble it. I think it's a tremendous stretch to say that one sentence, acknowledging a possible double jeopardy claim. This is Pennsylvania that handles just about every single direct appeal of a criminal conviction in Pennsylvania. And they don't know there are double jeopardy implications to that? Of course they do, but they only address the claims that are raised to them. They're barred from addressing claims sua sponte under state procedural law. A number of circuits have taken the position, we have not yet, that even if a claim is not actually presented by a petitioner, that if the court addresses it sua sponte, that that will satisfy the exhaustion requirement. So I think what we're asking about is whether the Superior Court's decision, which has language that suggests it at least contemplated a double jeopardy claim and was concluding that that claim for state procedural law reasons was meritless, nonetheless had the opportunity to consider the claim and that would satisfy the concerns of exhaustion, that is avoiding unnecessary friction between the federal and state systems. Why isn't that an appropriate rule for us to adopt given the interests of the exhaustion requirement? And why wasn't that satisfied by the Superior Court's decision? Well, I would say it's not a fair rule because the state court really doesn't have a fair opportunity to address a question. It can't perceive all of the possible permutations and issues involved in a particular claim unless it's briefed to them. So I don't think the court does have a fair opportunity here. Isn't Judge Koss correct, though, about the policy underlying the exhaustion requirement? Absolutely. The elimination of tension between the two systems and that if we can glean from the record, and in particular the language of the Superior Court opinion, that they have considered this. Isn't that enough? Well, even if it is enough, I don't see how you could possibly glean that they considered and decided a double jeopardy claim based on a single sentence at most acknowledging, I mean, that there's possibly a double jeopardy claim. What else to repeat what Judge Ambrose asked? The Commonwealth is appealing a verdict of acquittal which is clearly impermissible. What other implications are there to that? Well, they may very well be. If the prosecution appeals a judgment of acquittal, that where you end up is trying the case again. Well, they may very well be addressing or identifying a double jeopardy claim, but that doesn't mean they're adjudicating it. I mean, adjudicating it means deciding it based on the briefs and pleadings and arguments made to them by the participants. The claim was never raised here. The appellate judge said in her opinion, we don't really have to get to that because you have a court that no longer has, in effect, the ability to make that call, isn't that correct? In other words, the appellate division said that at first glance, it appears that the Commonwealth is appealing a verdict of acquittal, which is clearly impermissible, but it concluded, relying exclusively on Pennsylvania law, that acquittal was a legal nullity because Judge Poserena was not permitted to bring the jury back. That's what it went off on. Right. So if the concept is fair presentation and it's been, in other words, do you understand what's at stake here if you're the appellate court? Yes, I understand what's at stake here, but I don't have to get there because I can go on state law that says once you discharge a jury, it cannot be reassembled. And then the question, to me, then comes back to some extent to Feng Fu and Martin Lennon, which is it appears if you put the two together, it seems, one could make an argument, clearly established that a post-mistrial acquittal, even if based on an improper procedure, bars retrial. That would be the argument. That would be the argument, Your Honor, but in evidence the Supreme Court said that the legal errors which don't invalidate an acquittal are errors in evidentiary rulings and errors in substantive law, not fundamental errors in procedure which strip the court of its jurisdiction to judge the killer innocent. You're using the word stripping a court of jurisdiction again, and is that what really happened here? A rules violation doesn't, by its nature, strip a court of jurisdiction. Well, Blacks tells us that jurisdiction means the power to grant relief, and that was absent here. This case is analogous to Sanford and to Surface, two cases which the district court doesn't even deal with, where the district court in those cases was not, again, completely devoid of all jurisdiction to do anything in the case. They just lacked the authority to judge the guilt or innocence of the accused. So do we understand your argument in your reference to the term jurisdiction to really mean the procedural power or procedural authority as distinct from the substantive legal basis for the decision to enter a directed acquittal or enter an alleged verdict? And under 2254D, Was the answer yes to that question? Yes. Under 2254D, we don't have to convince you that that's right. We just have to convince you that that's reasonable. That's a reasonable construction of the jurisdictional exception. Even accepting that that's a correct use of the term jurisdiction, and I accept it only for purposes of argument, you're certainly not suggesting that procedural propriety or the lack thereof can somehow prompt our duty under the Constitution, specifically here under the Fifth Amendment. Well, I'm not suggesting it. The Supreme Court is. In surface, they say the procedural context is not irrelevant. Acquittal has no talismanic importance is, I think, the language I'm paraphrasing that the surface court uses. So you have the Supreme Court saying procedural context is not irrelevant. But, again, Feng Fu, what the trial judge did there procedurally was just wrong. You can't stop the government in the middle of a case and because you're upset with the government and upset with the witness's credibility, just say, okay, I've had enough judgment of acquittal. And so you can understand why the First Circuit reversed. The Supreme Court understood why the First Circuit reversed. The judge was just wrong in a matter of procedure. And yet the Supreme Court says, too bad. There's something that overplays that. And what overplays that is that once you do this, you can't be retried. And what overplays that is who suffers for the error of the court, right? Well, I understand you are, but in other cases the Supreme Court has not found a procedural defect to be irrelevant or to be overridden by double-dealing. Feng Fu has never been overturned. No, but if there's cases on both sides, certainly the Commonwealth's position is at least reasonable. And, again, bear in mind your standard of review under 2254D. You don't have to believe that the state court was correct, got it right, just that it came down with a reasonable construction of this law, which is not Christopher. Do you even agree that, are you agreeing that Feng Fu was decided by the Supreme Court on the assumption that there was a procedural error, when it uses the term egregiously erroneous foundation, that that was saying that the district court lacked procedural authority? I thought your argument previously was that procedurally it was valid, but substantively that is making a decision, for example, to enter an acquittal because the court thought there was misconduct in the prosecutor's communications with the witness mid-testimony was an erroneous foundation for entering that acquittal. Exactly right, Your Honor. The latter characterization is our position, that the legal errors exception is just limited to errors of substantive law and errors of evidence coming in that shouldn't have evidentiary errors, and that procedural defects can void an acquittal. Well, then how do you answer the observation that I think was implicit in J. Jambro's question, that it wasn't procedurally proper in the midst of the government's case under the federal rules to enter that verdict? I'm not so sure I'm willing to concede that the dissent in Fong-Fu said that. I don't think the majority ever said that. Mr. Coffin, what do you make of the Court's language in evidence, that our cases have applied Fong-Fu's principle broadly? Well, then I don't want to describe what broadly means, and they mean errors in substantive law and errors in erroneous evidentiary rulings. And you have to read it in conjunction with surface, which says that the procedural context does matter. A completely different question. Am I correct that Ms. McDaniels has now done over ten years in jail? For a horrific crime. I know. Horrific crime. Horrific crime, if she was convicted of something. She was convicted. She has been convicted of three murders. We both understand each other on that. She was convicted the second time around. And there was no conviction on the involuntary manslaughter charge the second time around. It would merge that sentencing with the. The District Court just got that wrong. There was no acquittal on involuntary manslaughter ever in this case. The jury convicts the second trial of third-degree murder. Counsel, before you move on from that, because you have represented in your brief at a couple points that that was simply a false assertion by the District Court. But having obtained the State Court record, it actually appears on the verdict sheet that there was a not guilty verdict that was rendered as to involuntary manslaughter. In the second trial. In that second trial. Should we take it that you simply were not familiar with the State Court record? I assume we need not be concerned about a deliberate misrepresentation? No, Your Honor. And it's of no import ultimately to sentence anyone, right? Well, that's correct. But I consulted with the trial prosecutor, and she had absolutely no recollection. And it would be bizarre and unprecedented for them to progress, after convicting a third-degree murder, to progress that to a lesser-included offense. They don't do that. Nonetheless, the verdict sheet reflects that. Well, it's clearly a clerical error. And I apologize to the Court for not seeing that. Well, no, it wouldn't be a clerical error. I mean, they did it. It would be a misunderstanding of what their job was. Once they convicted of third-degree murder, then involuntary manslaughter would be subsumed within that, would it not? A clerical error on the part of whoever recorded that not guilty of involuntary. That's all I meant. Not a clerical error. A scrivener's error. No. I think it would be a misunderstanding on their part that they thought that having ruled on third-degree murder, they nonetheless had the rule on involuntary manslaughter when, in fact, they did not. I'm trying to help you. Thank you, Your Honor. Why don't we hear from your opposing counsel, Mr. Adama, and we'll get you back on the rebuttal. May I proceed? This is the case in which as a – You're going to have to speak up just a tad. This is the case in which the court so aptly set forth. There was obviously an error, a misunderstanding by the jury to Judge Pozzerini's questions regarding guilt or innocence. Let me just ask two dumb questions. It's so clear to Judge Pozzerini this was double jeopardy. Why did no counsel prior to Ms. McDaniel's pro se in a PICRA proceeding in the second trial use the term double jeopardy? I would have. I mean, that's why I argued cause and prejudice. I mean, a first-year law student, you think, would. It should have been done. Certainly in the second trial, a motion to dismiss should have been filed without doubt. Counsel, you've argued cause and prejudice, but it appears unless you can point me somewhere else in your brief that the cause and prejudice argument you've raised, to the extent you raised ineffective assistance, it's ineffective assistance only as to the ineffective assistance of trial counsel in failing to call an expert, not as to failing to raise double jeopardy. PCR counsel by not raising double jeopardy, Your Honor, I believe. It's not sufficient for PCRA counsel not to raise double jeopardy. Don't you need to argue for cause and prejudice that the ineffective assistance was PCRA counsel failing to raise ineffective assistance on the part of trial counsel raising double jeopardy? In a second case, yes. And where is that argument in your brief? Your Honor, I believe I included that, but I may have been mistaken. I thought I did. I'm perfectly frank with the court. Because that would make sense to argue that not only trial counsel is ineffective, but appellate counsel is also ineffective. When PCR counsel reviewed the record, the argument should have been raised. At least PCR counsel should have raised the issue, because it was raised by Ms. McDaniel Pro Se. She indicated it was double jeopardy was the only claim that she made. She didn't elaborate on it. And an affidavit letter was filed rather than any investigation being done by PCR counsel. Judge Ambrose asked you about confusion on the part of the jurors about the questions that were being asked in guilt or innocence, i.e. in returning the verdict. But the explanation we have from Judge Pozzarina in his opinion is that the jurors had become confused about how they were supposed to render a verdict and thought that they were required to find on third-degree murder and manslaughter jointly. Correct. Doesn't that suggest that the confusion that became apparent in whatever discussions took place in the deliberation room when everyone went back there related to the jurors' understanding of the jury instructions, that is, what they were required to return, whether it was joint or separate? That would be a valid point, but for the fact of the blackboard. As Your Honor would recall, there was a blackboard in which they indicated they had third-degree murder and it was all checked off not guilty. But that explanation reflects why they nonetheless didn't report it that way, because they appear, per this explanation, to have understood the instructions to be that they needed to return a joint verdict on the two counts. So do you agree with that? I think they were under that impression, yes. Whether they were under that impression, were they instructed to that effect? No, sir. So you had a confused jury. No question about it. Which certainly is amply demonstrated by the record, and if you have a jury that has evidenced through either questions or through being returned to the courtroom and expressing some difficulties in open court, whose responsibility is it to straighten that out? Well, if the jurors ask questions, obviously it's the judges. But I think the confusion lied on the part of the jurors by misunderstanding the instructions. But the instructions are standard. They're standard instructions. If that's the case, then in terms of the practical consequences of what we are presented with here, are you, in effect, asking us to hold that double jeopardy would permit a jury that has returned its verdict, where that has been recorded and the jury discharged? If, upon later questioning by defense counsel or the trial court, it appears that the jurors misunderstood something in the jury instructions, whether how they were to return it or even an element, and they would have acquitted, if re-polled with the correct understanding of those instructions, they would have acquitted, that that jury can be reconvened and a second verdict taken of acquittal, notwithstanding the Pennsylvania procedural rules. Is that, in effect, what you're asking us to hold? Your Honor, partly yes and partly no. The linchpin to this, which makes this case unusual, is the blackboard where they actually checked off the not guilties. But for that, then there would be all kinds of questions as to whether the judge or the defense attorneys intimidated these people or clarification. Then that would have been a different case. But we actually have a blackboard where they checked off not guilty, not guilty, not guilty. But my question doesn't include any sort of extraneous influence on the jury. I understand that. I understand that. The question is simply where the superior court here, inciting to Pennsylvania Supreme Court case law, talked about consideration of the evil consequences that would flow from permitting a jury to reassemble and alter its verdict on the ground of mistake, and that alone should deter courts from sanctioning such a practice, such that a jury's verdict, recorded verdict, is inviolate. Once recorded and the jury discharged, it shall not be permitted to impeach or alter or amend after separation or discharge. You seem to be asking us to hold that that procedural rule, that state law, is unconstitutional in violation of double jeopardy, if it turns out from post-discharge questioning that the jury misunderstood the jury instructions. Yes, ma'am. In that situation, yes, because of the fact that it was a clear determination by the jury that this woman was not guilty of third-degree murder, and there was a clear misunderstanding by the jury. These are common people viewing a horrendous case. Mr. O'Donnell, Judge Krauss asked you, said you seem to be suggesting that the state procedural rule is unconstitutional. Have you argued that anywhere? Does that appear in your brief that any procedural rule is unconstitutional? Well, no, I didn't argue that. I basically argued the exhaustion, and the way I argued the rule is that she exhausted her remedies by Judge Pazzerini's argument, by Judge Pazzerini's ruling regarding double jeopardy, and by the superior court indicating that the motion, the case before them is not a question of the Commonwealth appealing a verdict of not guilty. You're not arguing on the basis of McCandless that your client or her counsel at any stage actually exhausted by presenting this to the courts. You're resting solely on the ground that the trial and superior court in dealing with the Commonwealth's appeal engaged the merits. Is that right? Engaged in this concept, yes. In fact, you really avoided talking about the issue being presented to superior court. It wasn't specifically presented. It's clear. No one argued, especially, like I said, in the first trial. No one filed a motion to have it dismissed. Based on double jeopardy, there was no argument by counsel in front of the superior court. Double jeopardy, all these issues were there. They were available. Have you responded to Mr. Kaufman's argument that it really is a different double jeopardy argument that was sort of variant of the double jeopardy claim that was being considered at trial court level than was not, it wasn't presented, but at least considered by the superior court? Well, I look at the federal jurisprudence on double jeopardy, and it's quite liberal in exhaustion in presenting the cases, presenting the issue to the court for habeas purposes. Yes, we're presenting, but we're trying to evaluate whether the court sui sponte engaged the merits of the same double jeopardy claim that you're asking the federal system now to engage. At the superior court level? At the superior court level. No, they did not. Because that wasn't the issue that was before them. The issue before them at the first trial was the motion to quash, in which they specifically indicated this isn't a case in which we're being asked to overturn a verdict of not guilty to a third-degree murder charge. But there was arguments that were made which alluded to double jeopardy in that particular motion. But, no, there wasn't any chapter and verse, and that's not necessary for purposes of exhaustion, that you have to have chapter and verse. There's more than enough law that I cited in the briefs in which you just have to do this, you have to raise it in some format, but not specifically. But you're not arguing that it was raised. You're arguing that the court addressed it sui sponte. Oh, yeah, that's fine. That's sufficient. Actually, there's a case. And I just want to be clear, that's your argument, not that it was being presented by counsel. Right. And I think it's the Bassioli v. Attorney General case involving, I think, this circuit, in which the Supreme Court of the State of New Jersey indicated, used the terminology in a dissent, that there was something fundamentally unfair in the procedure. And this court found that was sufficient that the issue was raised for purposes of habeas review. Can you also address for us in your adversary has made the argument in interpreting the Supreme Court's cases that there is a distinction between a case  of procedural validity and substantive validity of something that is offered as a verdict of acquittal. Do you disagree with that reading of the Supreme Court cases? And if so, what do you make of the language that's used in Smith and Evans indicating that states can prohibit judges from entering mid-trial verdicts of acquittal with the implication that there then would not be a double jeopardy problem with a later reconsideration, even if the judge had entered such a verdict? That is, the predicate is the state procedural rules defining the validity of or the procedural power of the court to enter the verdict. Well, the verdict here was entered at the end of the case, not mid-case. So there's a factual determination, a factual difference. And there is none when it comes to double jeopardy issues. I think the case in Martin Lennon sets forth an example where the only difference between that case and this case was that there was a Rule 29 motion filed at the end of the case. It was filed appropriately. Whereas in this case, Judge Pasarini saw that there was an error and it was a time period in which post-verdict motions could have been filed and then we wouldn't be here. Of course, why file post-verdict motions when a judge gave you an acquittal on a particular case would make no sense for the defense attorney at that point in time. But the Supreme Court in Martin Lennon went out of its way to say that the verdict in that case was, quote, entered on the express authority of and strictly in compliance with the applicable procedural rule. Right. What does that language mean if it doesn't have significance to whether the verdict is considered a final verdict for purposes of double jeopardy or not? The judge still had jurisdiction. And the verdict was, the jury did render a verdict in this particular case, though by mistake. And the judge corrected the verdict. Well, put aside jurisdiction, at least in the sense that we generally discuss jurisdiction. We're talking about procedural validity. And doesn't the Supreme Court's language in Martin Lennon indicate that it attaches significance to whether the verdict under the applicable procedural rule, that would be the federal rules of procedure in the district court, or in this case the Pennsylvania state procedural rules governing the court, identifies the verdict that is reported to be entered as valid or not within the power of the trial court or not? They can enter it, Judge, but as far as purposes of double jeopardy, if it's entered illegally or incorrectly, double jeopardy will attach. And there's a valid double jeopardy argument to be made. If that's the case, what does that language in Martin Lennon mean? Why was it even identified? Why was that highlighted by the Supreme Court? I think my argument is much stronger when it comes to Benton v. Maryland, in which there was a decision involving a state case, which was similar in that the defendant was convicted based on an indictment that was later determined to be void and then was retried. And in that particular situation, double jeopardy attached. There was both procedural and substantive issues in that case. My time is up. Thank you, counsel. Thank you. Mr. Carpenter. Yes, Your Honors. Just one brief point of clarification that came up during counsel's argument. There was no claim of trial counsel and effectiveness for failing to raise the double jeopardy claim. It's never been raised in federal court. So Martinez is not available here to salvage McDaniel's clear default of this claim in state court. Or to the extent it's alluded to in the appellate brief, your point is it wasn't raised before the district court. That's correct, Your Honor. Can I just go to Martin Lennon for a moment? It says here that the Supreme Court said that going through the facts, the trial judge comes to the conclusion the trial judge is thereby barred from attempting to override or interfere with the juror's independent judgment in a manner contrary to the interests of the accused. Because such a limitation on the role of a trial judge, however, has never inhibited his ruling in favor of a criminal defendant, establishing the binding nature of a directed verdict. And the court goes on and says, nonetheless, if the judge acts incorrectly and enters a judgment of acquittal, that's binding for double jeopardy purposes. I think Judge Krauss touched on this. The court did not act incorrectly in Martin Lennon. It acted explicitly in accordance with Federal Rule of Procedure 29C. And that's the difference here. In this case, the court did not act in accordance with any applicable procedural rule. And Martin Lennon says that that makes a difference. How else can you explain that language in Martin Lennon, emphasizing the court's accordance with Federal procedure? And I know I keep referencing these cases, but I think they're important. And I think at that point it's reinforced in the Surface and Sanford decisions as well. Then let's come to this case. Mr. Donovan said, look, we didn't have to file a motion under Pennsylvania law, which I thought was 608, with the equivalent of 129, the analog to it. And because the judge did it for us. As a practical matter, that's it. That's what happened here. So why should we have to do something that makes no sense? The judge has the jurisdiction to consider things afterwards. In effect, what the judge did was sua sponte, if you will, maybe incorrectly procedurally, just entered a judgment of or allowed a judgment of not guilty to be entered. Well, our position is that the procedural error makes a difference. The only kinds of errors, as the Supreme Court has said in Evans, that don't make a difference are errors in substantive law or erroneous evidentiary rulings. Procedural errors of this sort, where the court is usurping an authority which it simply lacks, do matter. And do invalidate acquittals. Let's assume, if you're right, what language in either Fong Fu, Martin Lennon, Smith, or Evans explicitly says that? Well, I think surface says it when it says that merely calling something an acquittal has no talismanic importance and cannot be divorced from the procedural context in which that so-called acquittal arose. I'm paraphrasing. I think I got reasonably close. Do you have a cite for that? I certainly have it in my brief, Your Honor. Okay. I'll find it then.  Thank you very much. Thank you, Your Honors. Thank you to both counsel for well-presented arguments, and we'll take the matter under advisement.